IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARY MUSSENDEN, | ) | 1:10cv02313 LJO DLB |
| Plaintiff, | ) ) | FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S |
| vs. | ) ) ) | SOCIAL SECURITY COMPLAINT |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

## BACKGROUND

Plaintiff Mary Mussenden ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff protectively filed for SSI on September 14, 2005.  AR 58.  She alleged disability since July 30, 1999, due to back problems, stomach problems, female problems, diarrhea, panic and

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1   anxiety attacks and high blood pressure.[2]  AR 49-57.  After being denied initially and on

2   reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 14.

3   On May 13, 2008, ALJ James Mitchell held a hearing.  AR 331-71.  ALJ Mitchell denied benefits on

4   November 3, 2008.  AR 11-29.  On October 12, 2010, the Appeals Council denied review.  AR 3-6.

5            Hearing Testimony

6            ALJ Mitchell held a hearing on May 13, 2008, in Stockton, California.  AR 331.  Plaintiff

7   appeared with her attorney, Sengthiene Bosavanh.  Vocational expert ("VE") Susan Moranda also

8   appeared.  AR 333.

9            Plaintiff testified that she was born in 1956.  She graduated from high school and attended

10  one year of college.  She does not have any vocational or on-the-job training.  She can read and write

11  the English language.  AR 334-35.

12           Plaintiff stopped working in January 2002.  She could not do her in-home support services

13  job and was fired.  She has not made any work attempts since January 2002.  AR 335.  In the past,

14  Plaintiff did in-home supportive services, which included patient care, housekeeping and cooking.

15  AR 336.  Other than in-home care, Plaintiff also provided childcare for five years through the

16  Welfare Department.  Plaintiff cannot return to any of these jobs because she has pain in her lower

17  back, her neck, her arms and her legs.  AR 339.

18           Plaintiff lives in an apartment with her husband.  Her twenty-one year old son sometimes

19  stays with them.  AR 342.  Plaintiff prepares meals once or twice a day.  She washes dishes once a

20  day.  She does not mop, sweep or vacuum.  She dusts once a week and does laundry once every

21  couple of weeks.  She does not clean the bathroom.  She goes shopping with her husband once a

22  week.  She makes her bed two or three times a week.  Her husband changes the sheets.  She spends

23  four or five hours a day watching television.  She reads for an hour a day and listens to the radio,

24  stereo or iPod for two hours a day.  She does not visit with other people, but she has visitors once a

25  month.  For the rest of the day, she lies down or sits down, closes her eyes and relaxes.  She does not

26

27         [2]Plaintiff subsequently amended her disability onset to November 2005.  AR 333.

28                                          2

go to church.  She does not go outside very often.  In a week, she will leave the house five times.  She has a license and drives once a day.  AR 342-46.

Plaintiff testified that she sleeps 10 or 10 ½ hours in a 24-hour period.  She takes medication twice a week.  Dr. Seng is her primary medical doctor.  She saw him three times in the past 12 months.  He has not put her on any restrictions.  She has not been to the emergency room or been held overnight in the hospital in the last 12 months.  She is not seeing any type of mental health professional.  She does not attend any meetings on a regular basis, such as AA.  She has never had a drug or alcohol problem.  AR 347-49.

Plaintiff reported that she can stand for 15 or 20 minutes.  She can sit for half an hour.  She can walk a block.  She can put on her own socks and shoes.  She does not have any problem reaching forward with her right hand, but can hardly do it with her left hand.  She has problems reaching to the side or reaching overhead with her left hand.  She has pain in her left arm, shoulder and neck.  She does not have any problem holding onto things or picking up things, telling the difference between hot and cold water with her hands, signing a check or writing a note.  She does not have any problem hearing.  She has a problem turning her head from left to right because her neck hurts.  She does not have any problem using a telephone.  AR 349-53.

Plaintiff testified that she hurts in her lower and upper back, her neck, her shoulders and her knees.  On an average day, she has sharp, constant pain that is pretty strong.  The pain is continuous and she sometimes has muscle spasms.  Sitting down relieves her pain a little bit and her medications help.  She has not been diagnosed with paralysis or seizures.  She is 5'3" and weighs 202.  She does not do any type of exercise and does not have any hobbies.  AR 353-56.

Plaintiff further testified that she has a severe bowel problem.  She has accidents in stores or in the car.  It is embarrassing and she does not want to go out.  The doctor said she had to be on medicine the rest of her life and it doesn't always help.  She does not know when it will flare up.  She sometimes goes to the restroom eight times a day.  On average, she has diarrhea four days a week.  AR 356-58.

Plaintiff testified that she has problems with anxiety and stress.  She takes Lorazepam for

3

1   anxiety, which helps.  She also has problems with concentration when she is in pain.  AR 359-60.

2        According to the VE, Plaintiff's past relevant work as childcare provider is unskilled, SVP 2

3   with medium exertion.  Plaintiff's past relevant work as in-home health care provider is unskilled to

4   semi-skilled, SVP 2 or 3.  It is considered medium level exertion in the national economy, but was

5   performed at the light level.  AR 361-62.

6        For the first hypothetical, the ALJ asked the VE to assume an individual 51 years of age, a

7   high school education, one semester of college, and Plaintiff's work history.  This individual could

8   lift, push, pull 20 occasionally, 10 frequently, could walk and stand frequently and could sit, stoop or

9   bend occasionally.  The VE testified that this individual could return to Plaintiff's past relevant work

10  as performed.  There also were light, unskilled jobs in the regional economy that she could perform,

11  such as retail sales attendant, motel/hotel housekeeper and small parts assembler.  AR 362-63.

12       For the second hypothetical, the ALJ asked the VE to assume a person unlimited in attention,

13  concentration, understanding and memory, with diminished but correctable vision and unlimited

14  hearing.  This person was slightly limited in overhead, side and front reaching with the left

15  nondominant feature.  Her fine and gross manipulative abilities were intact and unlimited.  She was

16  slightly limited in the ability to do SRT.  She had no environmental restrictions.  She could have

17  unlimited contact with public and occasional supervision.  Her pain was slight to moderate.  The VE

18  testified that this person could return to Plaintiff's past relevant work as she performed it.  There

19  would be an estimated 40 percent erosion of the other jobs.  AR 363-64.

20       For hypothetical 2A, the ALJ asked the VE to assume a person moderately limited in

21  overhead, side and front reach with the left nondominant feature and slightly limited in attention,

22  concentration, understanding and memory.  The VE testified that this person could not return to

23  Plaintiff's past relevant work and there would be 90 percent erosion of the other jobs.

24       For hypothetical 2B, the ALJ asked the VE to assume a person with a pain level described as

25  moderate to severe requiring frequent medications, but only slightly limited in the ability to do SRT.

26  Of the previously mentioned jobs, the VE estimated 100 percent erosion.

27       For the third hypothetical, the ALJ asked the VE to assume an individual 51 years of age,

28                                                     4

with a high school education, one semester of college and Plaintiff's work history.  This person could lift, push, and pull 10 pounds occasionally, 5 frequently, could walk, stand, stoop and bend occasionally and sit frequently.  The VE testified that this person could not return to Plaintiff's past relevant work, but there would be other jobs, including small parts assembler, cashier, and information clerk.  AR 364-65.

For the fourth hypothetical, the ALJ asked the VE to assume a person with unlimited attention, concentration, understanding and memory, diminished but correctable vision and unlimited hearing.  This person was slightly limited in overhead, side and front reach with the left nondominant feature, but fine and gross manipulative abilities are intact.  She was slightly limited in the ability to do SRT, but had no environmental restrictions, with unlimited public contact and occasional supervision.  Her pain was slight to moderate.  The VE testified that there would be 50 percent erosion of the previously mentioned jobs.  AR 365-66.

For hypothetical 4A, the ALJ asked the VE to assume a person slightly limited in attention, concentration, understanding and memory, but moderately limited in overhead, side and front reach with the left nondominant feature.  The VE estimated 90 percent erosion.  AR 366.

For hypothetical 4B, the ALJ asked the VE to assume a person with a moderate to severe pain level requiring frequent medication, but who would remain only slightly limited in the ability to do SRT.  The VE estimated 100 percent erosion.  AR 366.

For the next hypothetical, Plaintiff's counsel asked the VE to assume a person with a poor ability to interact with workers and a poor ability to deal with various changes in a work setting.  The VE testified that this would not be acceptable for employment standards.  AR 367.

For the next hypothetical, Plaintiff's counsel asked the VE to assume a person moderately limited in the ability to understand and remember detailed instructions, moderately limited ability to carry out detailed instructions, and moderately limited ability to perform activities within a schedule and maintain regular attendance.  The VE testified it would erode the jobs.  AR 368.  If the person had a moderately limited ability to work in coordination with or proximity to  others without being distracted by them, then the person would not be able perform the jobs.  AR 368.  If the person had a

moderately limited ability to interact appropriately with the general public, a moderately limited ability to accept instructions and respond appropriately to criticism from supervisors and a moderately limited ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, then it would completely erode the jobs.  If a person had a moderate limitations in daily living activities and moderate difficulties in maintaining concentration, persistence or pace, it would affect the jobs.  If a person had to go to the restroom about eight times a day for diarrhea four days of the week, then that person would be working less than full-time.  AR 369-70.

Medical Record

On February 3, 2004, Plaintiff was admitted to the hospital for acute cholecystitis.  AR 166-68.  A sonogram of the abdomen revealed cholelithiasis.  AR 205.  On February 5, 2004, a laparoscopic cholecystectomy was attempted and converted to an open and operative cholangiogram.  AR 186-87.

On July 14, 2004, Plaintiff complained that since her cholecystectomy she had diarrhea with occasional incontinence.  She also had stress with headaches almost daily.  The provider diagnosed anxiety, along with probable IBS.  AR 247.

On August 5, 2004, Plaintiff reported persistent diarrhea, fatigue and dizziness.  She also indicated that Zoloft was not effective for her anxiety.   AR 145.

On August 17, 2005, Plaintiff sought treatment from Dr. Meetinder K. Rai for complaints of moderate lower back pain and constipation.  On examination, Plaintiff had tenderness and spasm of her lumbar spine.  She was diagnosed with constipation and lower back pain.  AR 300-01.

On November 9, 2005, Plaintiff's provider submitted a form in support of Plaintiff's request for General Assistance.  According the provider, Plaintiff had diagnoses of lower back pain and hypertension.  The provider opined that Plaintiff could not work full or part-time, could not work outside, and could not participate in agricultural work.  The provider further opined that Plaintiff had a disability that would restrict her ability to perform certain tasks.  No tasks were specified.  AR 215.

On March 29, 2006, S. K. Madireddi, M.D., completed a consultative examination.  On

6

physical exam, Plaintiff had full cervical spine range of motion in all planes.  She had no tenderness to palpation and no spasms.  She had full range of motion of the upper extremities in all joints with 5/5 motor strength.  Her thoracolumbar spine showed compensated scoliosis with a primary curvature to the right.  She had slight tenderness between L3 and L5 in the midline and over the paraspinous areas bilaterally.  She had no trigger points or spasms.  She had full range of motion of her bilateral hips, knees and ankles with 5/5 motor strength in all lower extremity muscle groups. She was able to walk with a normal gait, squat and kneel.  AR 216-17.  Dr. Madireddi diagnosed Plaintiff as morbidly overweight, with scoliosis of the thoracolumbar spine, status post spinal surgery to the lumbar spine with residual difficulties in forward flexion, status post cholecystectomy and difficulty controlling her bowels for reasons Dr. Madireddi could "not ascertain."  AR 217.  Dr. Madireddi opined that Plaintiff could sit for six hours total and stand or walk for six hours out of eight hours.  She could lift and carry 10 pounds frequently and 15 pounds infrequently.  She did not need an assistive device, but was limited to occasional bending and stooping.  AR 217-18.  Dr. Madireddi further opined that Plaintiff was capable of at least sedentary work.  It was "somewhat mystifying why she [had] not been able to work since 2002 following her hysterectomy."  AR 218. Dr. Madireddi noted that Plaintiff did not have chest pain and she voiced no complaints about anxiety or panic disorders.  AR 218.

A lumbar spine x-ray completed on March 30, 2006, showed disc space narrowing and degenerative change at L-4/5 and L-5/S-1 with an old L-5 laminectomy defect.  There was considerable degenerative change involving the L-5/S-1 apophyseal joints.  No acute findings were seen.  AR 219.

On April 25, 2006, Plaintiff sought treatment from Dr. Rai for complaints of dizziness and weakness.  She was diagnosed with palpitations. AR 298-99.

On April 27, 2006, Dr. Larry Sutter completed a consultative psychiatric evaluation.  During the evaluation, Plaintiff reported that her husband was caught with a bag containing some heroin and was in the Genesis Program and on Methadone.  She stated that she had "high stress no matter what."  AR 221.  She also reported worrying all the time, with restlessness, irritability, fatigue and

7

1   decreased concentration.  AR 221.  Plaintiff indicated that she last used crank or methamphetamine

2   in 2002.  She last worked in 2001 doing in-home support services.  On mental status exam, Plaintiff

3   talked very fast throughout the entire interview.  She was extremely anxious and nervous.  Her affect

4   was slightly restricted.  Dr. Sutter diagnosed Plaintiff with a generalized anxiety disorder and

5   assigned her a Global Assessment of Functioning ("GAF") of 60.  AR 223-24.  Dr. Sutter opined that

6   Plaintiff would have a moderate impairment dealing with coworkers, supervisors and the public in a

7   work or work-like situation.  She also would have a moderate impairment performing detailed and

8   complex tasks in the workplace due to severe anxiety and would have a moderate impairment

9   maintaining regular attendance in the workplace due to a generalized anxiety disorder.  AR 224.

10         On June 20, 2006, Plaintiff sought treatment from Dr. Rai for complaints of diarrhea 4-5

11   times per day, along with moderate to severe lower back pain relieved with Vicodin and Baclofen.

12   On examination, Plaintiff had decreased spine range of motion, tenderness and spasm.  Dr. Rai

13   diagnosed diarrhea and lower back pain.  AR 296-97.

14         On July 31, 2006, C. H. Dudley, a state agency medical consultant, completed a Psychiatric

15   Review Technique form.  Plaintiff had a generalized anxiety disorder that did not precisely satisfy

16   the diagnostic criteria for anxiety-related disorders.  Consultant Dudley opined that Plaintiff had

17   moderate restriction of activities of daily living, mild difficulties maintaining social functioning and

18   moderate difficulties maintaining concentration, persistence or pace.  AR 226-39.  Dr. Glenn Ikawa,

19   another state agency medical consultant, reviewed and affirmed this opinion on June 28, 2007.  AR

20   226.

21         Consultant Dudley also completed a Mental Residual Functional Capacity Assessment form.

22   On the form, Consultant Dudley opined that Plaintiff had moderate limitations in the ability to

23   understand and remember detailed instructions, moderate limitations in the ability to carry out

24   detailed instructions, moderate limitations in the ability to perform activities within a schedule,

25   maintain regular attendance, and be punctual within customary tolerances and moderate limitations

26   in the ability to work in coordination with or proximity to others without being distracted by them.

27   Consultant Dudley further opined that Plaintiff had moderate limitations in the ability to interact

28

8

appropriately with the general public, moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors and moderate limitations in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Plaintiff retained the ability to understand, remember and carry out simple work related instructions in a workplace setting with reduced supervisor, co-worker and public contact.  AR 240-42.

On August 1, 2006, Dr. P. E. Boetcher, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form.  Dr. Boetcher opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and could sit about 6 hours in an 8-hour workday.  She had no pushing or pulling limitations.  Dr. Boetcher also opined that Plaintiff occasionally could climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but she could never climb ladders, ropes or scaffolds. She had no manipulative, visual, communicative or environmental limitations.  AR 244-51.

On November 22, 2006, Dr. Rai prepared a form for Plaintiff's eligibility for General Assistance.  Dr. Rai identified Plaintiff's diagnoses as lower back pain and diarrhea.  She had a fair prognosis, but her disability was permanent.  Dr. Rai opined that Plaintiff could not work full-time or part-time, could not work outside and could not participate in agricultural work.  Dr. Rai further opined that Plaintiff had a disability that would restrict her ability to perform certain tasks.  She could not lift or bend.  AR 252.

On May 27, 2007, Dr. Silvia Torrez, a psychiatrist, completed a consultative psychiatric evaluation.  Plaintiff appeared irritated with the interview and the interviewer.  She endorsed symptoms of depression, poor self-esteem, headaches, social isolation and chronic back pain.  She reported that her pain level was a 10 on a scale of 1-10, and most days all she could do was sit and watch TV.  She indicated that she spends most of her day in a chair and must be cared for by her husband and neighbors.  Plaintiff reported that she experimented with methamphetamine four times beginning at age 22.  On mental status exam, Plaintiff's behavior was sarcastic and edgy and her attitude was negative and somewhat oppositional.  She had appropriate thought content and denied auditory or visual hallucinations.  Her mood was dysphoric and her affect was tearful when

9

describing her physical condition.  She was diagnosed with a generalized anxiety disorder and assigned a GAF of 60.  Dr. Torrez commented that Plaintiff appeared to respond to questions in an honest manner, but was irritated by the interview process.  There did not appear to be any evidence of Plaintiff exaggerating symptoms.  However, Plaintiff failed to mention her husband's heroin addiction and methadone maintenance.  Dr. Torrez indicated that Plaintiff's symptom severity of anxiety appeared to be in the mild to moderate range.  Dr. Torrez opined that Plaintiff had a good ability to understand, remember and carry out very short and simple instructions and a good ability to understand and remember detailed instructions.  Her ability to maintain attention and concentration was fair.  Her ability to accept instructions from a supervisor and respond appropriately was fair. Her ability to sustain an ordinary routine without special supervision was fair.  Her ability to complete a normal workday and workweek without interruptions at a consistent pace was fair.  Dr. Torrez further opined that Plaintiff's ability to interact with coworkers was poor given her low level of frustration tolerance and negative attitude primarily due to her feelings of helplessness and worthlessness related to her medical condition.  Plaintiff's ability to deal with the various changes in the work setting was fair to poor, influenced primarily by her anxiety.  The likelihood of her emotionally deteriorating in a work environment was fair.  AR 253-59.

On June 14, 2007, Dr. Adi Klein completed a consultative internal medicine evaluation. Plaintiff complained of back pain and bowel incontinence.  She stated that she has 3-6 diarrhea-type bowel movements per day.  She is able to dress, bathe and toilet without assistance.  On physical examination, Plaintiff appeared anxious and responded quickly to all questions.  Her abdomen was morbidly obese, but her bowel sounds were normal.  She had no tenderness to palpation in the midline or paraspinal areas of her back.  She had no muscle spasm and her muscle tone appeared to be equal throughout her back.  She had questionable effort on flexion, extension and lateral flexion. Her range of motion in her upper and lower extremities was grossly normal bilaterally.  She had normal reflexes and her gait was normal.  She was able to change position and get on and off the examining table without difficulty.  Dr. Klein diagnosed back pain, bowel incontinence per history and anxiety.  Dr. Klein opined that Plaintiff could lift and carry 20 pounds occasionally and 10

1    pounds frequently.  She could stand and walk for 6 hours and sit for 6 hours.  She had no postural,

2    manipulative, visual, communicative or environmental limitations.  AR 260-64.

3           On July 18, 2006, Plaintiff complained of moderate to severe lower back pain.  Dr. Rai noted

4    lower spine pain, decreased range of motion, tenderness and spasm.  AR 294-95.

5           On August 14, 2007, Plaintiff sought treatment from Dr. Rai for complaints of lower back

6    pain of moderate intensity.  She also reported feeling very anxious.  On examination, her lumbar

7    spine was tender to palpation and her range of motion decreased.  Dr. Rai diagnosed Plaintiff with

8    lower back pain and anxiety.  She was prescribed Norco, Baclofen, and Ativan.  Dr. Rai

9    recommended rest, reducing stress and no heavy lifting.  AR 292-93.

10          On October 3, 2007, Plaintiff first sought treatment with Dr. Seang Seng.  Plaintiff brought a

11   note informing Dr. Seng that she had been disabled and was having chronic diarrhea two to three

12   times per day since 2003.  Plaintiff indicated that all tests were negative and she did not have a

13   history of weight loss.  Plaintiff complained of depression, difficulty sleeping, nervousness,

14   weakness, dizziness, fainting spells, diarrhea, back pain and leg pain.  On examination, Plaintiff had

15   erythematous lesions consistent with a fungal infection underneath her breasts.  She also had a severe

16   inguinal fungal infection over both sides of her abdomen and an eczematous lesion over her right

17   hand.  Dr. Seng diagnosed "[p]resumably irritable bowel syndrome," hypertension that appeared not

18   to be controlled secondary to being out of medications, eczema of the right hand, chronic back pain

19   and a fungal infection.  AR 287-88.

20          On January 3, 2008, Plaintiff sought follow-up treatment with Dr. Seng.  Plaintiff reported

21   being stressed because her husband lost his job.  Dr. Seng diagnosed Plaintiff with a stress related

22   problem and irritable bowel syndrome that appeared to be improving with medication.  AR 286.

23          On April 3, 2008, Plaintiff's medical provider noted that her hypertension was stable and her

24   chronic low back pain was controlled.  Her stress was somewhat better as her husband had part-time

25   employment.  AR 285.

26          On April 18, 2008, Dr. Seng completed a form to assist Plaintiff's eligibility for General

27   Assistance.  Dr. Seng identified Plaintiff's diagnosis as chronic back pain.  Dr. Seng also opined that

28                                                    11

1    Plaintiff could not work full or part time.  She could not work outside and could not participate in

2    agricultural work.  She also had a disability that restricted her ability to perform certain tasks, but no

3    tasks were identified.  AR 284.

4

5         ALJ's Findings

6         The ALJ found that Plaintiff had not engaged in substantial gainful activity since November

7    10, 2005.  The ALJ further found that Plaintiff had the severe impairments of stenosis of the lumbar

8    spine, obesity and right shoulder impingement syndrome.  Despite these impairments, Plaintiff

9    retained the residual functional capacity ("RFC") to perform light work.  She occasionally could

10   stoop and bend and was slightly limited in reaching with the non-dominant left arm.  Additionally,

11   Plaintiff had a slightly limited ability to perform simple, routine, repetitive tasks due to slight to

12   moderate pain.  With this RFC, the ALJ concluded that Plaintiff could perform her past relevant

13   work as an in-home care worker.  AR 16-29.

14                                **SCOPE OF REVIEW**

15        Congress has provided a limited scope of judicial review of the Commissioner's decision to

16   deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the

17   Court must determine whether the decision of the Commissioner is supported by substantial

18   evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson*

19   *v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514

20   *F.2d 1112, 1119, n. 10 (9th Cir. 1975)*.  It is "such relevant evidence as a reasonable mind might

21   accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole

22   must be considered, weighing both the evidence that supports and the evidence that detracts from the

23   Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

24   evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*,

25   *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the

26   Commissioner's determination that the claimant is not disabled if the Commissioner applied the

27   proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

28

1   *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

2   ## REVIEW

3   In order to qualify for benefits, a claimant must establish that she is unable to engage in

4   substantial gainful activity due to a medically determinable physical or mental impairment which has

5   lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §

6   1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such

7   severity that she is not only unable to do her previous work, but cannot, considering her age,

8   education, and work experience, engage in any other kind of substantial gainful work which exists in

9   the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden

10  is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

11  In an effort to achieve uniformity of decisions, the Commissioner has promulgated

12  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §

13  416.920(a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged

14  in substantial gainful activity since November 10, 2005; (2) has an impairment or a combination of

15  impairments that is considered "severe" (stenosis of the lumbar spine, obesity and right shoulder

16  impingement syndrome) based on the requirements in the Regulations (20 C.F.R. § 416.920(c)); (3)

17  does not have an impairment or combination of impairments which meets or equals one of the

18  impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can perform her past

19  relevant work.  AR 16-29.

20  Here, Plaintiff contends that the ALJ: (1) made an inadequate step two finding; (2)

21  incorrectly evaluated her testimony; and (3) made a faulty step four finding.

22  ## DISCUSSION

23  A.   Step Two - Severe Impairments

24  Plaintiff contends that the ALJ erred by not finding her anxiety and irritable bowel syndrome

25  ("IBS") severe at step two of the sequential evaluation process.

26  At step two of the sequential evaluation, the ALJ determines whether the claimant has any

27  impairment that significantly limits her ability to do basic work activities.  20 C.F.R. § 416.920(c).

28

1    "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight

2    abnormalities) that has no more than a minimal effect on the ability to do basic work activities."

3    *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.2005) (citing Social Security Ruling ("SSR") 96-3p

4    (1996)). "[T]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims."

5    *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996). The purpose is to identify claimants whose

6    medical impairment is so slight that it is unlikely they would be disabled even if age, education and

7    experience were taken into account. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

8            Here, the ALJ found that Plaintiff had the severe impairments of stenosis of the lumbar spine,

9    obesity and right shoulder impingement syndrome.  Thus, Plaintiff prevailed at step two of the

10   sequential evaluation process.  Once a claimant prevails at step two, the Commissioner proceeds

11   with the sequential evaluation and considers at each step the combined effect of *all* of the

12   individual's medically determinable impairments regardless of severity.  20 C.F.R. § 416.923;

13   *Smolen*, 80 F.3d at 1290 (ALJ "must consider the combined effect of all of the claimant's

14   impairments on [his] ability to function, without regard to whether each alone [i]s sufficiently

15   severe"); *Luther v. Astrue*, 2010 WL 3504754, *5 (E.D. Cal. Sept. 3, 2010) (claimant prevailed at

16   step two; relevant inquiry is whether the ALJ properly considered the functional limitations of all

17   medically determinable impairments at the remaining steps).  Accordingly, the crux of Plaintiff's

18   argument is whether the ALJ properly considered all of Plaintiff's impairments, including her

19   anxiety and IBS, and accommodated in the RFC finding those limitations that were supported by the

20   record.

21   B.      Residual Functional Capacity

22                  1.      Mental Residual Functional Capacity

23           As stated, Plaintiff's step two argument is essentially a challenge to the RFC finding.

24   Plaintiff contends that the ALJ failed to account for the mental limitations caused by her anxiety in

25   the RFC finding.  The Commissioner counters that the ALJ accommodated Plaintiff's mental

26   limitation in the RFC by including "nonexertional limitations."  AR 22.  While the Commissioner

27   correctly notes that the ALJ included nonexertional limitations in the RFC finding, such limitations

28                                                      14

were unrelated to Plaintiff's mental impairment.  Rather, the ALJ found that Plaintiff had a "slightly limited ability to perform simple, routine, repetitive tasks *due to slight to moderate pain*."  AR 22 (emphasis added).  In other words, the ALJ did not attribute any nonexertional impairments to Plaintiff's non-severe mental impairment.  Indeed, the ALJ did not even discuss or analyze Plaintiff's identified mental impairments in developing the RFC.  AR 22-28.

Although the ALJ conducted an extensive discussion of Plaintiff's mental impairments at step two of the sequential evaluation, this is insufficient.  Even if the Court accepted the ALJ's step two analysis to include the ALJ's consideration of Plaintiff's functional limitations resulting from her mental impairment, the Court finds that the ALJ improperly rejected the mental limitations identified by the consultative psychiatric examiners, Drs. Torrez and Sutter.[3]

As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).  In this instance, the ALJ failed to provide either clear and convincing reasons or specific and legitimate reasons for rejecting the opinions of Drs. Torrez and Sutter.

a.  Dr. Torrez

On May 27, 2007, Dr. Torrez completed a psychiatric examination.  Following the examination, Dr. Torrez diagnosed Plaintiff with a generalized anxiety disorder and assigned a GAF of 60.  Plaintiff's symptom severity appeared to be in the mild to moderate range.  Dr. Torrez opined that Plaintiff's ability to interact with coworkers was poor given her low level of frustration tolerance and negative attitude.  Dr. Torrez also opined that Plaintiff's ability to deal with the various changes in the work setting was fair to poor, influenced primarily by her anxiety.  AR 253-59.

---

[3]The ALJ's analysis of the psychiatric opinions is relevant to both the step two and RFC finding.

In discounting Dr. Torrez's opinion, the ALJ noted that it was "based at least partially upon the claimant's negative attitude toward the interview process" and on Plaintiff's "performance during an interview scheduled for the express purposed of gaining eligibility for benefits." AR 20.   AR 20, 253-59.  These are not clear and convincing nor specific and legitimate reasons based on substantial evidence in the record for discounting Dr. Torrez's opinion.  Dr. Torrez did not indicate that Plaintiff was uncooperative or put forth suboptimal effort during the examination.  Indeed, Dr. Torrez found that despite being irritated by the interview process, Plaintiff had a generalized anxiety disorder and resulting limitations.  AR 257-58.  The ALJ was not entitled to substitute his own lay opinion for that of Dr. Torrez, a medical doctor with the presumptive ability to recognize the existence of a psychiatric condition.

The ALJ's reasoning suggests that he rejected Dr. Torrez's limitations based on Plaintiff's credibility.  However, the Ninth Circuit has held that an examining physician's opinion should not be discredited solely on the basis of an ALJ's determination that the claimant's subjective complaints were not credible. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir.2008). Moreover, Dr. Torrez expressly found that Plaintiff "appeared to respond to questions in [an] honest manner" and "there did not appear to be any evidence of the [Plaintiff] exaggerating symptoms."  AR 257.

To the extent that the ALJ attempted to reject Dr. Torrez's opinion because of Plaintiff's "lack of regular medical treatment for a mental impairment," this is error.  AR 20.  The Ninth Circuit has questioned the practice of discrediting a claimant with a mental impairment based on the failure to seek treatment. *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) ("the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day" is an improper basis for rejecting an examining physician's opinion); *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989) (it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation).

16

1          b.      Dr. Sutter

2          On April 27, 2006, Dr. Sutter completed a consultative psychiatric evaluation.  He diagnosed

3   Plaintiff with a generalized anxiety disorder and assigned her a GAF of 60.  AR 223-24.  He opined

4   that Plaintiff would have a moderate impairment dealing with coworkers, supervisors and the public

5   in a work or work-like situation.  She also would have a moderate impairment performing detailed

6   and complex tasks in the workplace due to severe anxiety and would have a moderate impairment

7   maintaining regular attendance in the workplace due to a generalized anxiety disorder.  AR 224.

8          In discounting Dr. Sutter's opinion, the ALJ gave "greater weight" to the GAF of 60 than to

9   the moderate limitations identified by Dr. Sutter.  AR 20.  This is neither a clear and convincing

10  reason nor a specific and legitimate reason for rejecting Dr. Sutter's limitations.  A GAF score of 60

11  indicates moderate symptoms or any moderate impairment in social, occupation or school

12  functioning.  Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. At 32.  The ALJ does

13  not point to specific deficiencies or inconsistencies between the GAF and the limitations to justify

14  the rejection of Dr. Sutter's moderate limitations.

15         In finding her mental impairment not severe, the ALJ reasoned that Plaintiff did not stop

16  working because of a mental impairment and when asked why she is not working, she complains

17  generally of physical symptoms.  AR 20.  However, this is not sufficient to justify the rejection of the

18  psychiatric opinion rendered by Dr. Sutter.  As with Dr. Torrez, the ALJ is not entitled to substitute

19  his own judgment for that of a medical professional.

20         Based on the above, the ALJ's analysis of the medical opinions regarding Plaintiff's mental

21  impairment is not supported by substantial evidence and is not free of legal error.  As a result, the

22  ALJ's RFC determination regarding her mental impairment may be flawed.

23                 2.      Physical Residual Functional Capacity

24                 *Irritable Bowel Syndrome*

25         Plaintiff next argues that the ALJ erred in finding her IBS non-severe.  As noted above, the

26  relevant inquiry is whether the ALJ properly considered Plaintiff's IBS and included any related

27  limitations in the RFC finding that were supported by the record.  The Court finds that the ALJ

28                                          17

properly considered Plaintiff's IBS and did not err in the rejection of her reported limitations.

Plaintiff appears to argue that the ALJ improperly rejected the opinion of her treating physician in 2006 that she was unable to work because of low back pain and diarrhea.  Opening Brief, pp. 8-9.  However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  In this case, the physician's opinion did not identify any limitations directly related to diarrhea and a subsequent physician opinion in 2008 did not identify IBS or diarrhea as the basis for any disability.  AR 28, 252, 284.  The ALJ fully considered the medical record, noting that Plaintiff complained of occasional bowel incontinence in July 2004, but rarely made further complaints of bowel incontinence.  The ALJ further noted that Plaintiff complained of constipation, not diarrhea, in August 2005.  AR 27, 301.  Thereafter, in June 2006, she complained of diarrhea for two or three days.  Therefore, the ALJ was not required to accept the unsupported opinion rendered in 2006.

Additionally, the ALJ rejected any limitations resulting from IBS for reasons related to Plaintiff's credibility.  The ALJ first noted inconsistencies in Plaintiff's allegations concerning bowel movements.  AR 27.  For example, the ALJ pointed out that Plaintiff alleged that she was unable to feel when she is having a bowel movement, but she made few, if any, complaints of such inability to her medical providers.  AR 27.  The ALJ also noted that Plaintiff made inconsistent statements regarding the number of bowel movements she experienced on a daily basis, contrasting her report of two to three bowel movements a day in October 2007 with her report of three to six bowel movements a day in June 2007.  AR 27.  An ALJ may properly consider inconsistencies when discounting a claimant's credibility.  *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use "ordinary techniques of credibility evaluation," including consideration of inconsistent statements); *Smolen*, 80 F.3d at 1284 (ALJ may consider ordinary techniques of credibility evaluation, such as prior inconsistent statements and other testimony that appears less than candid).

The ALJ also cited Plaintiff's failure to seek additional or alternative treatment for her bowel incontinence despite her claims that she had more than 100 accidents and that certain medication did

not work very well.  AR 27.  A claimant's failure to seek treatment is a proper basis for finding

allegations not credible.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to

consider lack of medical treatment in assessing credibility); *Bruton v. Massanari*, 268 F.3d 824, 828

(9th Cir. 2001) (claimant's failure to seek or follow prescribed treatment is a proper basis for finding

her allegations of disabling pain and other symptoms not credible); *see also Parra v. Astrue*, 481

F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative treatment" is sufficient to discount a

claimant's testimony regarding severity of an impairment).

Based on the above, the ALJ was not required to include unsupported limitations from

Plaintiff's IBS in the RFC determination.

*Other Physical Limitations*

In addition to her IBS, Plaintiff claims that the ALJ improperly translated the state agency

physician's limitation to repetitive stooping and bending into a limitation to occasional stooping and

bending.  Based on the opinion of Dr. Boetcher, the ALJ found that Plaintiff retained the ability to

stoop and bend occasionally.  AR 22, 28.  This determination is supported by Dr. Boetcher's opinion.

In assessing her postural limitations, Dr. Boetcher opined that Plaintiff could stoop, kneel, crouch,

crawl and balance occasionally.  AR 246.  There is no error.

Based on the above, the ALJ's analysis of her physical residual functional capacity is

supported by substantial evidence and free of legal error.

C.   Credibility

Plaintiff asserts that the ALJ improperly rejected her testimony.  The Commissioner counters

that the ALJ properly discredited Plaintiff's testimony as unsupported by the record and internally

inconsistent.  The Court agrees.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other
> non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
> However, to discredit a claimant's testimony when a medical impairment has been

established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.*  Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

As discussed above, the ALJ discounted Plaintiff's credibility based on inconsistencies in testimony and inconsistencies between her testimony and conduct.  For example, the ALJ considered Plaintiff's allegation that she was unable to feel when she is having a bowel movement, but noted that she made few, if any, complaints about an inability to detect a bowel movement to her providers. AR 27.  Indeed, the ALJ noted periods of time in which Plaintiff rarely, if ever, made complaints of bowel incontinence.  AR 27.  As another example, the ALJ considered Plaintiff's claim that her back condition worsened after her surgeries, but reasonably concluded that a hysterectomy and a cholescystectomy would not be expected to cause worsening pain due to scoliosis.  AR 27.  An ALJ may properly consider inconsistencies when discounting a claimant's credibility.  *Tonapeytan*, 242 F.3d at 1148; *Smolen*, 80 F.3d at 1284

Further, the ALJ discounted Plaintiff's allegations based on a lack of objective medical evidence.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.2001).  For instance, the ALJ considered evidence that Plaintiff told Dr. Torrez in May 2007 that her pain level was 10/10 on any given day, but x-rays of her back showed

20

no acute changes, she retained full 5/5 motor strength and had full range of motion in her limbs.  AR 27, 219, 253-59, 260-64.  The ALJ also noted Dr. Madireddi's opinion that Plaintiff was capable of at least sedentary work and was puzzled why she had been unable to work since 2002 following her hysterectomy.  AR 27, 218.

Based on the above, the ALJ has provided specific, cogent reasons for discounting Plaintiff's credibility.

D.   Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected the lay testimony of her sister, Nancy Poole. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006)).  Such testimony is competent evidence and "*cannot* be disregarded without comment." *Id.* (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996)).  If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Id.*  Further, the reasons "germane to each witness" must be specific. *Stout*, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

Here, the ALJ discussed statements provided by Ms. Poole, including her statement that she helped Plaintiff with everything.  AR 25-26.  The ALJ gave little weight to this statement based on Plaintiff's testimony that she was able to do household chores.  AR 26.  The ALJ also cited contradictory medical evidence demonstrating that Plaintiff was able to bend, had full range of motion in her shoulders, elbows and wrists and she retained full 5/5 motor strength. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001) ( "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").  The reasons given by the ALJ were germane to Ms. Poole's statements and the ALJ did not err in declining to fully credit them.

E.   Step Four - Past Relevant Work

Plaintiff asserts that the ALJ erred in finding that she could return to her past relevant work as an in-home care worker.  As the ALJ erred in assessing her mental impairment and because the RFC

21

1   is in question, the Court cannot determine whether the step four finding is adequate.  Therefore, the

2   ALJ should make a new step four finding if necessary after reconsideration of the psychological

3   opinion evidence.

4   F.      Remand

5           The decision to remand to the Commissioner for further proceedings or simply to award

6   benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir.

7   2000); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can

8   remedy defects in the original administrative proceedings, a social security case should be remanded.

9   Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of

10  benefits is appropriate."  *McAllister*, 888 F.2d at 603 (citation omitted); *see also Varney v. Secretary*

11  *of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of

12  benefits in cases where no useful purpose would be served by further administrative proceedings . . .

13  or where the record has been thoroughly developed.").

14          Here, the Court finds that the errors identified above can be remedied with further

15  proceedings and recommends remand.  On remand, the ALJ should weigh and analyze the medical

16  opinions of Drs. Torrez and Sutter, as well as the other medical evidence regarding Plaintiff's mental

17  impairment.  The ALJ also should determine Plaintiff's RFC and, if necessary, obtain testimony

18  from a vocational expert.  The Court expresses no opinion as the what the outcome on remand

19  should be.

20                                          **RECOMMENDATION**

21          Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial

22  evidence in the record and is not based on proper legal standards.  Accordingly, this Court

23  RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

24  Social Security be GRANTED AND THE ACTION BE REMANDED FOR FURTHER

25  PROCEEDINGS.

26          These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill

27  pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served

28                                                  22

with these findings and recommendations, the parties may file written objections with the court.  The

document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


     IT IS SO ORDERED.

     **Dated:   November 3, 2011        _____/s/ Dennis L. Beck_____**
                                        UNITED STATES MAGISTRATE JUDGE

23